# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## SOUTHERN DIVISION

| | | |
|---|---|---|
| LARRY McKAIG and | ) | |
| HEATHER McKAIG, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | No. 6:11-CV-4014-DGK |
| v. | ) | |
| | ) | |
| TANNEY COUNTY COMMISSION, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER GRANTING PARTIAL SUMMARY JUDGMENT

This case arises from the rezoning and commercial development of land near the Plaintiffs' home in Taney County, Missouri. Plaintiffs Larry and Heather McKaig allege the Taney County Defendants[1] granted Defendants Bill and Kelly Majors, who are developing land across a highway from the McKaig's residence, an emergency waiver and zoning permits in violation of state law and county zoning rules. They also allege that in so doing Defendants violated their Fourteenth Amendment right to procedural due process. Plaintiffs have filed suit under both state law and 42 U.S.C. § 1983. They seek injunctive relief, damages for the diminished value of their property, and attorneys' fees.

Now before the Court is the Taney County Defendants' Motion for Summary Judgment (doc. 29). The Taney County Defendants contend the Court lacks subject matter jurisdiction over portions of the state law claims, Counts I – III, because Plaintiffs failed to exhaust their administrative remedies before filing suit. Defendants further contend that they are entitled to

---

[1] The Taney County Defendants are the Taney County Commission by and through its elected commissioners Check Pennel, Jim Strafuss, and Danny Strahan, in their public capacity only; the Taney County Planning Commission by and through its elected commissioners Randall Cummings, Ray Edwards, Carl Pride, Shawn Pingleton, Susan Martin, Mark Blackwell, Sarah Klinefelter, Rick Caudill, and Frank Preston; Eddie Coxie, apparently in his official capacity as the Taney County Planning Commission Administrator only; and the Taney County Board of Adjustment. Excluded from these Defendants are Bill and Kelly Majors.

summary judgment on Count IV, the section 1983 claim, because Plaintiffs received procedural due process. Defendants also argue the individual Taney County Defendants are entitled to qualified immunity.

Defendants' motion is GRANTED IN PART. With respect to Counts I – III, the Court differentiates between issuance of the Division II permit and issuance of the emergency waiver and Division III permit. The Court holds Plaintiffs failed to exhaust their administrative remedies by timely appealing the issuance of the Division II permit within 90 days, thus the Court lacks subject matter jurisdiction over these counts with respect to the Division II permit. However, the Court possesses jurisdiction to hear state law claims relating to issuance of the emergency waiver and Division III permit with respect to these counts. With respect to Count IV, the Court holds it was not clearly established at the time the "emergency appeal" was granted and permits issued that the procedure Defendants used was unlawful, thus the individual Taney County Defendants are entitled to qualified immunity.

## Summary Judgment Standard

A moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A party who moves for summary judgment bears the burden of showing that there is no genuine issue of material fact. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 256 (1986). When considering a motion for summary judgment, a court must scrutinize the evidence in the light most favorable to the nonmoving party, and the nonmoving party "must be given the benefit of all reasonable inferences." *Mirax Chem. Prods. Corp. v. First Interstate Commercial Corp*., 950 F.2d 566, 569 (8th Cir. 1991) (citation omitted).

2

To establish a genuine issue of fact sufficient to warrant trial, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the nonmoving party must set forth specific facts showing there is a genuine issue for trial. *Anderson*, 477 U.S. at 248. But the nonmoving party "cannot create sham issues of fact in an effort to defeat summary judgment." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.*, 49 F.3d 399, 402 (8th Cir. 1995) (citation omitted).

## Facts

Viewing the evidence in the light most favorable to the Plaintiffs, the Court finds the facts to be as follows. Properly controverted facts, facts immaterial to resolution of the pending motion, and facts not properly supported by the cited portion of the record have been omitted.

**A.      Applicable Missouri law**

Taney County, a third-class county, adopted county zoning and planning under the provisions of Mo. Rev. Stat. § 64.800 to § 64.905. *Earls v. Majestic Pointe, Ltd.*, 949 S.W.2d 239, 242 (Mo. Ct. App. 1997). The following statutory provisions are relevant to the dispute here. Section 64.865 provides that,

> Any county commission which has adopted a zoning plan . . . shall appoint an officer or shall designate one of the existing officials to enforce the provisions thereof. **After the appointment or designation of the officer or official, no building or other structure shall be erected** . . . **nor shall the use of any land be changed without a permit issued by the officer or official.**

(Emphasis added). Section 64.863 provides that,

> After the adoption of a zoning plan . . . no use of any parcel of land included in the plan or regulations shall be changed without a public hearing and . . . notice, at least fifteen days before the hearing, by regular mail to all owners of any real property located

3

within six hundred feet of the parcel of land for which the change
is proposed.

Finally, § 64.870.1 requires a board of zoning adjustment to hear all appeals and specifies that "appeals [to the Board of Adjustment] shall be taken within a period of not more than three months, and in the manner provided by the rules of the board."

## B.     The Taney County Development Guidance Code

The Taney County Commission has adopted the Taney County Development Guidance Code ( "the Code") to manage the county's growth and development.  The introduction to the Code provides that "no plat of any subdivision of land shall be recorded and that no building or other structure shall be erected, constructed, reconstructed, or enlarged, nor the use of any land be changed without a permit issued pursuant to these Codes."  Code, at 5.

The Code defines the "Planning Commission/Taney County Planning and Zoning Commission" as "a group of persons . . . elected to hear, investigate, report on, and act upon matters relating to the enforcement of this Code."  Code § 2, at 10.  The "Board of Adjustment" is "an officially constituted body whose principal duties are to hear appeals and, where appropriate, grant variances from the strict application of the Taney County Development Guidance Code."  Code § 2, at 6.  And the "County Commission" are those "elected officials responsible for establishing policies and procedures, enacting ordinances, supervising the activities of County department, adopting County budget, and providing various other services."  Code § 2, at 6.

The Code defines an "Absolute Policy" as "a requirement of the Code that if not met or satisfied will result in the application for a permit being rejected."  Code § 2, at 5.  "Relative Policies" are "conditions of the Code that encourage or discourage certain activities but are not

4

necessarily required to be met or satisfied. That is, there is some degree of latitude in these particular parameters of the Code." Code § 2, at 11.

The Code defines "Administrative Approval" as "any approval or decision that could be performed by the Designated Official in the planning and zoning office without requiring the approval of the Planning Commission." Code § 2, at 5. The "Designated Official" is "the Administrator of the Taney County planning and zoning Department or assigned delegate, as designated by the County Commission and the Planning Commission, charged with the operation of the Planning and Zoning department and the administration of the development guidance codes, as directed by the planning commission." Code § 2, at 7.

The Code requires a Division II permit be issued for any "**new commercial**, industrial, or institutional **uses that have been issued a Division III permit**." Code § 4.1.2.(a), at 15 (emphasis added). The process to receive a Division II Permit is as follows:

> Step 1: PRE-APPLICATION CONFERENCE
> The filing of an application for Division II permit shall be preceded by Pre-Application Conference. Pre-application conferences are to be arranged with the applicant, who must submit at a minimum, a sketch plan as the basis for discussion at the conference. The purpose of the Pre-Application Conference is to ensure the developer understands the requirements of the Development Guidance Code as they affect the planned project and to provide technical assistance on erosion control, sewage disposal, parking, basic site planning and other subjects pertinent to the project. The pre-application conference is required but not a regulatory proceeding and is intended as a service to the developer.
>
> Step 2: FILING
> An application for Division II permit may be submitted at any time within one hundred twenty (120) calendar days after the Pre-application Conference and during regular business hours. The applicant shall also submit proof of ownership, sketch plan, and technical plans.
>
> Step 3: REVIEW

5

After all required information has been presented to the Planning & Zoning staff, review shall be completed within thirty (30) calendar days. This review may require consultation with other county functions and departments on Technical Plans, and coordination with other state and local agencies. Considerations, such as easements, roads, property access, building height, and parking, among others, shall be reviewed. If it is determined that the proposal is in compliance with the Development Guidance Code and the requirements placed on the project by the Planning Commission, the permit shall be issued at an Administrative Hearing (see below). The property shall be posted in at least one location a minimum of five (5) calendar days prior to the scheduled Administrative Hearing. If the examiner finds the development is not in compliance with the Development Guidance Code or the requirements set forth by the Planning Commission, the application shall be denied. If the application is denied, the developer shall receive prompt written notice of the denial

Step 4: ADMINISTRATIVE HEARING
To ensure that the developer is in complete understanding with regards to the requirements of this Development Guidance Code and the Division II permit (and, as applicable, the Division III decision of record), an administrative hearing shall be scheduled by planning and zoning staff and attended by the developer or an authorized representative. Developer will be presented with written notice of the approval of their application for a permit, a copy of the decision of record and the Division II permit. Copies of all applications for Division II permit and supporting information are maintained in the Planning & Zoning office.

Code, Appendix C, at 42-43.

A Division III permit is required for "**land-use changes**, including all subdivisions and re-subdivisions (replat)." Code § 4.1.3.(c), at 15 (emphasis added). Receiving a Division III permit is a seven-step process:

Step 1: PRE-APPLICATION PROCESS
The filing of an application for Division III permit shall be preceded by Pre-Application Conference. Pre-application conferences are to be arranged with the applicant, who must submit at a minimum, a sketch plan as the basis for discussion at the conference. The purpose of the Pre-Application Conference is to ensure the developer understands the requirements of the Development Guidance Code as they affect the planned project

6

and to provide technical assistance on erosion control, sewage disposal, parking, basic site planning and other subjects pertinent to the project. The pre-application conference is required but not a regulatory proceeding and is intended as a service to the developer.

Step 2: FILING
The filing must occur within 120 days of the Pre-Application Conference.

Step 3: CONCEPT HEARING
At the concept hearing, the applicant or the representative presents to the Planning Commission their project plan and a pulmonary plat. If the Planning Commission determines that the project is feasible and appropriate, a decision shall be rendered to move to public hearing.

Step 4: APPLICATION FOR PUBLIC HEARING
The developer shall provide Planning and Zoning with all materials needed to make the project file complete.

Step 5: PUBLIC NOTICE
Division III permits are reviewed at public hearings that are scheduled at regular Planning Commission meetings. The hearing shall be preceded by at least one notice that is published in a local newspaper of general circulation throughout County at least fifteen (15) calendar days before the public hearing.

Step 6: PUBLIC HEARING
At the public hearing, a Staff Report will be read to the Planning Commission describing the proposed developers level of compliance with the policies adopted in these Codes. Members of the public in attendance shall be permitted to address the Planning Commission and state their position and reasons in favor or against proposed development.

Step 7: DECISION OF RECORD
Following the planning commission vote on the Division III permit application, a Decision of Record will be prepared by the planning and zoning staff. The developer is responsible for having the Decision of Record filed with the Taney County Recorder's Office. When the developer has received their copy of the Decision of Record and their Division III permit, the developer may then apply for any required Division I, Division II, and/or Land Grading permit.

Code, Appendix D, at 44-47.

The Code also contains provisions for property owners who fail to apply for permits. Section 4.10 provides,

> Posted Notices
> Under certain conditions where work is in progress that has not been permitted, the property may be physically posted. The posting used will be based on the specific situation of the work in progress; these postings are:
>
> > No Permits Posted
> > This posting shall be used when work is begun without having first applied for and received the appropriate permit(s). This posting indicates that the Developer is to contact the Planning & Zoning department and resolve the permit issue. This posting does not imply or require work to be halted. However, if the developer does not respond to the posting within five (5) business days, a Stop Work Order may be posted.

Code § 4.10, at 17.

The Code permits any person aggrieved by the issuance of a permit the right to appeal to the Board of Adjustment pursuant to Mo. Rev. Stat. § 64.870. Code § 7.2, at 21. Any appeal must be filed within 90 calendar days of the original decision. Code § 7.3, at 21.

The Code contains no provision for an emergency waiver procedure by which the County Commission can provide an exception to, or variance from, the procedures outlined in the Code.

**C. Events in the present lawsuit**

As best the Court can determine, the undisputed facts are as follows.[2] This dispute concerns the permitting process, or lack thereof, accompanying the commercial development on a piece of land ("the Property") located at 13159 US Highway 160 in Forsyth, Taney County,

---

[2] The parties briefing concerning the factual record here is incomplete and confusing. For example, Defendants' proposed statement of fact #38 asserts that, "[o]n or about March 10, 2010, a designated official and Division II Inspector of Taney County Planning, issued a Division II Permit for Mr. Majors to proceed with his development . . . ." But Defendants' proposed statement of fact #42 suggests the Division II permit was granted March 23, 2010, and Defendants' exhibit G indicates the permit was issued March 11, 2010.

Missouri. Construction of improvements on the Property began before February 19, 2010. Significant construction work, including excavation, pouring foundations, and the construction of metal buildings, began before Taney County issued either a Division II permit or a Division III permit.

On February 19, 2010, the Administrator of Taney County Planning and the designated official for the Taney County Planning Commission ("Planning Commission"), Eddie Coxie, sent a letter to James Whitley, Stephen Whitley, and Christopher Whitley concerning construction on the Property.[3] The letter read:

> Gentlemen,
>
> I drove past your property today and noticed some activity involving the placement of a culvert. I inquired to the purpose of this activity and was informed there was to be some development happening in the near future but that all permits were in place. I returned to the planning office and searched our records and was unable to find any permit approvals for activity on this property. Please be advised of the need and the process to receive approval for permits in Taney County as listed below:
>
> Taney County requires a land disturbance permit for any disturbance of ground totaling one acre or more. Land disturbance is defined as anything other than land clearing of brush and undergrowth. In addition, the Missouri Department of Natural Resources is going to require a land disturbance permit, usually after Taney County has issued our permit.
>
> The establishment of any buildings other than residential or agricultural requires a Division III permit for land use change. Taney County operates under a process known as performance zoning wherein each parcel of land is evaluated in light of the particular request for the parcel. Taney County does not create commercial parcels until a particular application is requested. The enclosed documents show the land to currently be assessed as

---

[3] The parties agree that Mr. Coxie believed the Whitleys were the record owners of the Property and so mailed the letter to them. Pls' Resp. to Defs.' Statement of Undisputed Material Facts (doc. 36 at 8). Unfortunately, the record is silent as to why Mr. Coxie believed the Whitleys owned the Property, whether Bill and Kelly Majors actually own the Property, and what the relationship is between the Whitleys and the Majors.

9

agricultural. The Division III process takes about sixty days to complete.

Any structure being erected will require a Division I or a Division II construction permit and a permit from the Taney County Regional Sewer District.

Please contact our office at the number listed below with your intentions and we will be able to assist you in obtaining the proper documents to allow your project to move forward. Thank you for your attention to these matters.

On February 25, 2010, the Majors filed an application for a Division III permit with the Planning Commission requesting a land-use change. The application did not include much of the information that the application purports to require. The application included an aerial view of the Property, but it did not include a legal description of the Property, a list of property owners within 600 feet of the Property, proof of public notification, proof of ownership, or a sketch plan of the project which completely demonstrated the request. In addition, no concept hearing was conducted before the application was made.

Also on February 25, 2010, the Majors submitted to the Planning Commission an "Application For Concept Division III" which contained information about the Property and a description of the proposed development. The application described the proposed project as follows:

We are proposing to build (4) commercial bldgs on our property. We have the first bldg. package being delivered on Feb. 30th [sic]. We have equipment coming in starting March 1st for the buildings. The first building will be used as a used car facility with a small shop area for our own use. The second building would be used as a new tire store/light repair facility. The 3rd and 4th buildings are for future use to be determined.

A few days later, apparently on March 3, 2010, Bill Majors applied to the Taney County Commission ("the County Commission") for an emergency waiver from the permitting process.

10

The emergency waiver form describes the proposed improvement as an "automobile sales lot and shop, a tire shop with oil change and minor repairs, two spec buildings, and a residence." Under "Stated Emergency," it states: "Buildings and equipment being delivered the week of 3/3/2010 and did not know they would need permits to build. Mr. Majors instructed this is a possibility but the full process would need to be completed for final approval."

On March 5, 2010 at 8:00 a.m., the County Commission held a meeting to consider the emergency waiver request. The Presiding Commissioner was personally present, the Western Commissioner was present via teleconference, and the Eastern Commissioner was absent. The Commissioners approved the request after a two minute meeting. Plaintiffs were not present at the meeting and had no advance notice of the application for the emergency waiver.

Also on March 5, the Majors filed an "Application for Permit Division II" with the Planning Commission. Under "description of request," it states "metal building to be used as car sales office/shop." That same day, the Planning Commission transmitted a Division II Schedule Letter to Bill Majors informing him that a Division II hearing had been scheduled for March 11, 2010. The Planning Commission also issued a one page Division II Staff Report on the proposed development. The staff report describes the request as the construction of a tire shop.

At some point, again the record is unclear, Mr. McKaig received notice that the Planning Commission would be holding a hearing on the Majors' Division II permit.

On or about March 10, 2010, a Planning Commission employee issued Bill Majors a Division II Permit allowing the development to proceed. At the same time, the employee told Majors that he would have to comply with all the Code's provisions and secure a Division III Permit.

11

On March 11, 2010, the Planning Commission issued a Division II Decision of Record authorizing Bill Majors to proceed with the development. The Planning Commission imposed a number of conditions on the authorization, including "compliance with all applicable provisions of [the Code]" and "Compliance with any and all requirements established by the Planning Commission regarding Division III process." That same day, the Majors were notified that a public hearing on their Division III application had been set for May 10, 2010, and that the final review would occur May 17, 2010.

The facts related to whether Defendants complied with Code section 4.10 are as follows. At some point, it is unclear when, a notice of public hearing sign was posted on the Property. The sign did not state "No permits posted" or that work had begun on the Property without appropriate zoning permits. The notice of public hearing on the Majors' application for a Division II permit also did not state "No permits posted" or that work had begun on the Property without appropriate zoning permits.

On May 10, the Planning Commission issued a Division III staff report regarding the development. The staff report noted that the County Commission granted an emergency waiver allowing construction on the Property to proceed while the Planning Commission completed the Division III permit process, and that the Majors would be required to comply with the Code. The report provides the first public indication from any Taney County Defendant that the Property would also be used as a motorcycle sales and repair facility. As of this date, construction on the Property was approximately 75% complete.

On May 17, 2010, Mr. Coxie issued a decision of record for the Planning Commission approving the issuance of Division III Permit #10-7 for the Property. It authorized Bill and Kelly Majors "to construct four buildings for the purpose of a used car facility with shop area,

tire store and light repair facility, and a motorcycle sales and repair facility with the fourth building to be determined." The decision also required the Majors to comply with a number of restrictions, including specific Code provisions, in the future.

On August 13, 2010, Plaintiffs appealed, to the Board of Adjustments, the Planning Commission's issuance of the Division III permit on May 17, 2010 and its issuance of the Division II permit on March 23, 2010.[4] In their Notice of Appeal, Plaintiffs asserted that the Division II permit was void because it was issued prior to the Division III permit in violation of the Code. The appeal was taken 88 days after the Division III permit was issued and 143 days after the Division II permit was issued.

The Board of Adjustments held a contested hearing on this matter, but the record is unclear when. As part of the process, Plaintiffs were permitted to submit 22 exhibits for the Board's consideration.

On September 15, 2010, the Board of Adjustments issued its decision of record. Its decision was as follows:

> On September 15, 2010 the Taney County Board of Adjustment voted to deny an appeal request by Larry and Heather McKaig regarding a decision by the Taney County Planning Commission May 17, 2010 to approve a commercial development/auto shop located at 13159 St. Hwy. 160. The applications maintained that the Division II Permit was issued before the Division III Permit, that the property owner did not provide proof of ownership, the legal description was not accurate, the applicant started construction before permit issuance, the emergency waiver issued by the County Commission was not legal, the Division III Permit is unlawful under state statute, and their rights were violated because the proper procedures were not followed.
>
> With all five Board members present the vote was four in favor of denial and one against. The motion was based on the correct procedures [that] were followed by the both the property owner

---

[4] Although there is evidence in the record the Division II permit was granted March 10, 2010, see footnote 2, viewing the evidence in the light most favorable to the Plaintiff, the Court finds it was granted March 23, 2010.

> and staff in permit issuance, and the emergency use waiver is a
> county commission rule that the staff is obligated to follow.

> The applicant may apply to the Board for reconsideration for
> rehearing before applying to circuit court.

The parties dispute the amount of notice and opportunity to be heard Defendants gave Plaintiffs throughout the permitting process. It is undisputed that Plaintiff Larry McKaig received actual notice of some of the public hearings or meetings related to the Property. He attended the May 10th Planning Commission meeting and all subsequent public hearings. He also received notice of the hearing on the Division II permit, and his attorney addressed the Planning and Zoning Commission at the Division III permit hearing.

On or about October 21, 2010, Plaintiffs filed the pending lawsuit.

Count I is a petition for review under Rev. Stat. Mo. § 536.110. It alleges that the Defendant county agencies' grant of the emergency waiver violated state law and county Code requirements by issuing a Division III permit changing the use of property before a public hearing is held. Plaintiffs allege this action is void because it exceeded Defendants' statutory authority and jurisdiction. They also contend the Defendants' unlawful actions have diminished the value of their property. Plaintiffs seek a judgment declaring that: (1) the emergency waiver issued by the County Commission to the Majors is void; (2) the issuance of the Division II and III permits to the Majors is void; and (3) the Board of Adjustment erred as a matter of law in denying Plaintiffs' appeal of the issuance of the Division II and Division III permits.

Count II is a petition for certiorari brought pursuant to Rev. Stat. Mo. § 64.870.2. It repeats the allegations in Count I and asks the Court to conduct a de novo review and issue a declaratory judgment identical to that sought in Count I.

Count III is a request for injunctive relief brought under Rev. Stat. Mo. § 536.150. It alleges the emergency waiver was issued without a public hearing upon the record and was not a contested case under § 536.063, therefore Plaintiffs have a right to seek injunctive relief under § 536.150 to challenge the action. Plaintiffs seek: (1) a permanent injunction prohibiting Defendants from allowing the Majors to change the use of the Property without first obtaining the necessary permits after a public hearing; (2) an order rescinding the permits previously issued to the Majors; and (3) an order requiring the Majors to restore the property to its original condition prior to the unlawful construction activity.

Count IV is an action for damages brought pursuant to 42 U.S.C. § 1983. It alleges Defendants actions violated Plaintiffs' Fourteenth Amendment rights to procedural due process because construction was allowed to begin and a Division II permit issued before any public notice was given or any public hearing was held on the proposed land use change or issuance of the Division III permit. Plaintiffs seek damages and attorneys' fees.

**Discussion**

**I.** **The motion is granted with respect to the Division II permits in Counts I - III.**

**A.** **The Court lacks subject matter jurisdiction on Counts I – III as far as they relate to issuance of the Division II permit.**

Defendants initially argue the Court lacks subject matter jurisdiction over Counts I – III as far as they relate to issuance of the emergency waiver and the Division II permit because Plaintiffs failed to appeal their issuance to the Board of Adjustment within 90 days, thus they failed to exhaust their administrative remedies before filing suit. Plaintiffs counter that any failure to appeal within 90 days is irrelevant because the emergency waiver and permits were

Case 6:11-cv-04014-DGK   Document 63   Filed 04/16/12   Page 15 of 22

issued without statutory authority and thus are void[5] as a matter of law. Therefore they could file suit under Mo. Rev. Stat. § 536.100 at any time. In their reply, Defendants abandon their argument with respect to the emergency waiver. They concede that "the issuance of the Emergency Waiver by the Taney County Commission was not an action which the Commission was authorized to take. It was an ultra vires act." Reply Br. at 5.[6] As such, it was "wholly void, and of no legal effect." *Id.*

The Court holds Plaintiffs failed to exhaust their administrative remedies with respect to the Division II permit. State law provides that any landowner "affected by any decision of the administrative officer in administering a county zoning ordinance" may appeal to the board of zoning adjustment, but the appeal "shall be taken within a period of not more than three months, and in the manner provided by the rules of the board." Mo. Rev. Stat. § 64.870. And "[i]t has long been the rule that a party aggrieved by an administrative zoning decision" must exhaust its administrative remedies before seeking judicial review. *State ex. rel. Forget v. Franklin Cnty Planning and Zoning Comm'n*, 809 S.W.2d 430, 432 (Mo. Ct. App. 1991). Even when a party claims an administrative order is void for some reason, the order must be timely appealed to the board of adjustment before there can be judicial review. *Earls v. Majestic Pointe, Ltd.*, 949 S.W.2d 239, 243 (Mo. Ct. App. 1997); *Manchester Bank v. Enright*, 584 S.W.2d 416, 419 (Mo. Ct. App. 1979) (holding claim that an agency's decision granting charter to competing applicant was void because the applicant lacked a necessary qualification, still must be administratively

---

[5] Whenever a county commission exceeds its authority, its acts are void. *See Am. Aberdeen Angus v. Stanton*, 762 S.W.2d 501, 503 (Mo. Ct. App. 1988). A county commission has authority to "manage all county business as prescribed by law," Mo. Const. art. VI, § 7 (1945), but aside from the county's finances, "the county commission only has such power as the legislature sees fit to delegate." *Greene County v. Pennel*, 992 S.W.2d 258, 262 (Mo. Ct. App. 1999). "A county commission is not a general agent of the county or the state. Its powers are granted, limited and defined by law." *Am. Aberdeen Angus,* 762 S.W.2d at 502.
[6] Defendants also assert that if the waiver was an act within the County Commission's power, then this Court could not review it because any appeal would be untimely. Because Defendants have conceded that the County Commission's act was void, it is unnecessary for the Court to address this point.

appealed before judicial review could occur). The reasoning seems to be that an administrative agency is competent to determine whether it has exceeded its own jurisdiction, thus where there is a dispute over whether an order is void, a potential litigant must give the agency the opportunity to correct its own mistakes before seeking judicial review. *See Earls*, 949 S.W.2d at 242-43. Failure to do so is a failure to exhaust administrative remedies.

Here the Division II permit was issued March 10, 2010, but Plaintiffs' appeal was not filed with the Board of Adjustment until August 13, approximately 143 days later. This was well after the 90 day deadline had run, thus it was not timely filed. Although Plaintiffs argue the Division II permit was void because it could not have been issued until after the Division III permit was issued, this is an argument that Plaintiffs could have, and should have, raised with the Board of Adjustment before filing suit. Failure to raise it was thus a failure to exhaust Plaintiffs' administrative remedies.

With respect to the County Commissioner's issuance of the emergency waiver, as Defendants concede, nothing in state law or the Code authorized the County Commission to issue a waiver or variance in the zoning permit process. Consequently, the emergency waiver was void as a matter of law and Plaintiffs could file suit under § 536.100 without exhausting their administrative remedies first.

**B.** **The issuance of the emergency waiver and Division III permit did not comply with the Code or Missouri statutes.**

Next, Defendants contend they are entitled to summary judgment as a matter of law on Counts I-III because the change in use of the Property complied with the Code and state law. Defendants argue that although the Majors were allowed to continue with building construction before the Division III permit was issued (which approved a commercial land use), that did not

mean that they would necessarily be issued a Division III permit. Defendants also argue that the Majors' failure to obtain permits before starting construction should not necessarily have forced them to stop construction. Defendants observe that the Code contemplates that there will be property owners who do not apply for permits and allows that "under certain conditions where work is in progress that has not been permitted, the property may be physically posted." Defendants also argue that Mo. Rev. Stat. § 64.865 invested Mr. Coxie, the designated zoning official, with discretion to issue a Division III permit.

The Court finds no merit to these arguments. First, Defendants assert that the fact that the Majors were allowed to continue with building construction before the Division III permit was issued does not necessarily mean a Division III permit would ultimately be issued to them. Defendants' inference is that after the development was complete, the County might have inexplicably declined to withhold the Division III permit from the Majors. However, Defendants have not proven this. There is plenty of evidence on the record here for a reasonable jury to find otherwise. A reasonable jury could, for instance, infer that with respect to the Majors rezoning of the Property, the County Commission and the other Defendants simply side-stepped the lawful process.

Second, although the Code contains a procedure whereby work that is in progress and has not been properly permitted may be physically posted and allowed to continue, that procedure was never invoked here. The evidence on the record suggests the procedure the Majors' invoked was to ask for and receive an extralegal variance from the County Commission that enabled them to keep building while they belatedly went through the motions of complying with the permitting process. Assuming for the sake of argument that Mr. Coxie had some discretion in issuing permits, nothing in state law or the Code gives him discretion to effectively issue a permit

prematurely, which is arguably what happened here when the Division II permit was issued before the Division III permit, or when the Division III process was initiated by an incomplete application. Furthermore, state law requires the designated official, Mr. Coxie, to wield the discretion, not the County Commission, which is what happened here when it issued the emergency waiver.

By adopting a zoning plan and appointing Mr. Coxie as the designated official, Taney County triggered two statutes, Mo. Rev. Stat. § 64.863 and § 64.865. Section 64.863 provides (1) that no use of any parcel of land covered by the plan shall be changed without a public hearing, and (2) that the body that conducts the hearing shall give at least fifteen days notice to adjacent property owners. Section 64.865 provides that after appointment of a designated official, no building shall be constructed "nor shall the use of any land be changed without a permit issued by the officer or official." For purposes of deciding this motion, the Court finds the Majors began constructing improvements on the Property before February 19, 2010; that Defendants became aware of it on February 19th; and that Defendants permitted significant construction work—excavation, pouring of foundations, and construction of metal buildings—on the Property to begin before Taney County issued either a Division II or a Division III permit. Thus a reasonable jury could find that Defendants ignored state law and the Code in approving the land use change on the Property.

Given the record before the Court, the Court finds Defendants are not entitled to judgment as a matter of law with respect to issuance of the emergency waiver and the Division III permit on Counts I - III.

19

**II.    Summary judgment is denied on Count IV, but the individual defendants are entitled to qualified immunity.**

   **A.    Defendants have not carried their summary judgment burden on Count IV.**

Finally, Count IV of the Petition alleges that Defendants violated 42 U.S.C. § 1983 by depriving Plaintiffs' of their right to procedural due process.  More specifically, it asserts that Defendants deprived Plaintiffs of their right to prior notice and a public hearing: (1) before construction began on the Property, (2) before the emergency waiver and permits were issued, and (3) before any land-use change occurred.  In the zoning context where, as here, a landowner has a protectible property interest, "procedural due process is afforded when the landowner has notice of the proposed government action and an opportunity to be heard."  *Anderson v. Douglas County*, 4 F.3d 574, 578 (8th Cir. 1993).

Defendants argue they are entitled to summary judgment on this count because Plaintiffs received procedural due process in that they received notice of the Division II and III permit hearings.  Defendants also assert that Mr. McKaig attended all public meetings pertinent to the Majors' development, he was represented by counsel, and he submitted 22 exhibits and presented testimony at the Board of Adjustments hearing on his appeal.  Plaintiffs counter that they had no notice of the emergency waiver, and that they had no meaningful notice that a motorcycle sales and repair facility was part of the development.

It is difficult to determine from the existing record and the parties' briefs whether Defendants are entitled to judgment as a matter of law on this Count, the record is insufficient. While neither party makes a compelling argument, only Defendants have the burden of demonstrating they are entitled to judgment as a matter of law.  Because they have not carried their burden, this portion of the motion is denied.

Case 6:11-cv-04014-DGK   Document 63   Filed 04/16/12   Page 20 of 22

**B.   The individual Defendants are entitled to qualified immunity.**

That said, the Court finds Defendants are entitled to qualified immunity in their individual capacity.  "Qualified immunity protects government officials from liability under § 1983 when their conduct does not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Nance v. Sammis*, 586 F.3d 604, 609 (8th Cir. 2009) (quoting *Hope v. Pelzer*, 536 U.S. 730, 739 (2002).  It provides protection "to all but the plainly incompetent or those who knowingly violate the law."  *Malley v. Briggs*, 475 U.S. 335, 341 (U.S. 1996).  "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably."  *Pearson v. Callahan*, 129 S.Ct. 808, 815 (2009).  An official is entitled to qualified immunity unless (1) the facts, taken in the light most favorable to the injured party, show that the official's conduct violated a constitutional right; and (2) the constitutional right was clearly established at the time of the deprivation so that a reasonable official would understand his conduct was unlawful.  *Nance*, 586 F.3d at 609.  This is a fact specific inquiry which is focused on the "specific nature of the conduct complained of and the state of the law with respect to the identified conduct at the time the official acted."  *Myers v. Morris*, 810 F.2d 1437, 1459 n.16 (8th Cir. 1987).

In the present case, viewing the facts in the light most favorable to the Plaintiffs, the Court cannot say that at the time any violations occurred here it was *clearly established* that these violations were constitutional violations.  Plaintiffs cite no authority, nor can the Court find any, indicating it was clearly established that granting an emergency waiver to a zoning ordinance, even a waiver that was not authorized by any statute or zoning code provision and issued without notice or a hearing, amounts to a constitutional violation.  Similarly, Plaintiff has

Case 6:11-cv-04014-DGK   Document 63   Filed 04/16/12   Page 21 of 22

not cited a single case, much less an analogous case, suggesting it was clearly established that issuing a zoning permit in violation of Mo. Rev. Stat. § 64.863 and § 64.865 was a constitutional violation.  Consequently, the Court holds the individual Taney County Defendants are entitled to qualified immunity.

## Conclusion

For the foregoing reasons, Defendants' Motion for Summary Judgment (doc. 29) is GRANTED IN PART.  The Court holds it lacks subject matter jurisdiction on Counts I – III with respect to issuance of the Division II permit, and that the individual Taney County Defendants are entitled to qualified immunity on Count IV.

**IT IS SO ORDERED.**

Date:  April 16, 2012                                      ____/s/ Greg Kays_____
                                                            GREG KAYS, JUDGE
                                                            UNITED STATES DISTRICT COURT

Case 6:11-cv-04014-DGK   Document 63   Filed 04/16/12   Page 22 of 22